IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 590 |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| MARCO PROANO | ) | |

**RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant, Marco Proano ("Proano") by and through his attorney, Daniel Q. Herbert, respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 29(c) for judgment of acquittal on Counts I and II of the indictment. In support thereof, Marco Proano states as follows:

## I. Introduction

On September 15, 2016, the Government filed a two-count indictment against Marco Proano. The indictment charged Proano with two counts of unlawful unreasonable force in violation of 18 U.S.C. § 242. At the conclusion of the Government's case in chief, Proano moved for judgment of acquittal. At that time, this Honorable Court reserved ruling on the motion. At the conclusion of the trial, the matter was submitted to the jury. The jury found Proano guilty on Counts I and II. At this juncture, Proano does not have the benefit of the full transcript but offers a brief argument of the sufficiency of the evidence justifying judgment of acquittal on Counts I and II of the indictment. With respect to each of the points contained herein, Proano incorporates by reference all arguments made in open court, sidebars, court appearances and conferences as well as motions and memoranda.

## II. Legal Standard Under Federal Rule of Criminal Procedure 29(c)

A motion for a judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the Defendant. Rule 29(c) requires the entry of a judgment of acquittal where after viewing the evidence in the light most favorable to the United States, the trial court finds that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007). A conviction should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505(7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)). Despite this high standard, the verdict of a properly instructed jury is not sacrosanct. *United States v. Radomski*, 473 F. 3d 728 (7th Cir. 2007). As the Supreme Court has noted, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A defendant challenging the sufficiency of the evidence of his guilt is "not required…to demonstrate that no evidence at all supports the conviction", "but rather only that the evidence does not support a finding of guilt beyond a reasonable doubt." *United States v. Rahman*, 34 F. 3d 1331, 1337 (7th Cir. 1994).

Moreover, while "a conviction may be based solely on reasonable inferences from circumstantial evidence; a conviction cannot rest on mere speculation or conjecture." *United States v. Pickney*, 8 F.3d 4, 7 (2nd Cir. 1996). Where the government seeks to prove guilt solely with circumstantial evidence, the court "must insure that the verdict does not rest solely upon the piling of inference upon inference." *United States v. Moore*, 115 F.3d 1348, 1364 (7th Cir. 1997). Where the evidence of a crime is "equally consistent with a theory of innocence as a theory of guilt, [the] evidence necessarily fails to establish guilt beyond a reasonable doubt."

*United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991). When, as here, "a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then a reasonable trier of fact must necessarily entertain a reasonable doubt about guilt." *United States v. Bell*, 678 F.2d 547, 550 (5th Cir. 1982) (Anderson, J., concurring) *aff'd*, 462 U.S. 356, 103 S. Ct. 2398 (1983).

When reviewing the evidence in ruling on a motion for judgement of acquittal, the court should grant the motion where the government's evidence "is so scant that the jury could only speculate as to the defendant's guilt . . . and is such that a reasonable-minded jury must have a reasonable doubt as to the defendant's guilt." *United States v. Miller*, 761 F. Supp. 1368, 1376 (S.D. Ind. 1991) *quoting United States v. Beck*, 615 F.2d 441, 447-48 (7th Cir. 1980). Here, the government failed to present sufficient evidence for a reasonable jury to find Proano guilty beyond a reasonable doubt on either of the § 242 offenses. In the instant matter, the evidence presented by the government was "so scant that the jury could only speculate as to [Proano's] guilt. *Miller,* at 1376. Accordingly, Mr. Proano respectfully requests that this Court grant his motion for judgment of acquittal on Counts I and II of the indictment.

**A. The Evidence Presented at Trial by the Government was Insufficient to Support a Conviction on Counts I and II of the Indictment.**

The government had the burden of proving beyond a reasonable doubt that Proano willfully deprived Mr. Bates and Mr. Hemmans of their right to be free from unreasonable force by a person acting under the color of law. It is undisputed that Proano acted as a Chicago Police Officer at the time of the incident, however, it remains unproven that Proano's use of force was not reasonable and that Proano acted with the specific purpose to violate Mr. Bates and Mr. Hemmans constitutional rights. The Government was required to prove that Proano intended to deprive Victims A and B of their right to be free from the use of unreasonable force by a person acting under color of law.

### 1. The Government did not Prove Beyond a Reasonable Doubt That Proano Used Unreasonable Force.

It is well established that in determining the reasonableness of a particular use of force, it must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Reasonableness" must be evaluated based on the totality of the circumstances confronting an officer at "the moment" the officer employed force: "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id*. (citation omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The calculus of reasonableness must allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. The government had the burden of proving beyond a reasonable doubt that Proano's actions were unreasonable, which it did not do.

The government "may not prove its case . . . with conjecture camouflaged as evidence" by relying on guesswork or an unsupported, tenuous chain of inferences. *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (citations omitted). And where, as here, "the jury [had] to choose between two equally plausible inferences"—i.e., where the evidence is in "equipoise"—the government has not presented a sufficient case because "the jury necessarily would have to entertain a reasonable doubt." *United States v. Johnson*, 592 F.3d 749, 755 (7th Cir. 2010). Here, the jury did not have substantial evidence upon which to base a verdict of guilty beyond a reasonable doubt. *United States v. Spirk*, 503 F. 3d 619, 623 (7th Cir. 2007). The government's evidence at best, was "equally consistent with a theory of innocence" and "a theory of guilt" and

therefore failed to establish guilt beyond a reasonable doubt. *United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991).

The government did not prove that Proano's use of force was unreasonable. It played the video to the jury and argued that Proano's actions were unlawful. In light of recent volatile public demonstrations condemning Chicago Police use of force policy, and the government's continuous reference to the popular chant phrase "16 shots", it is not surprising that a Northern District of Illinois jury found Proano guilty despite the government's failure to present evidence of guilt. However, argument and pandering to external happenings do not constitute evidence for purposes of this motion. At trial, the parties developed a robust evidentiary record regarding the totality of the circumstances surrounding defendant's use of force. That evidence begins with the call that brought defendant to the location of 95th and LaSalle in the evening of December 23, 2013.

Around 17:05 hours, a dispatch operator went over the air and stated, "[g]o ahead unit with an emergency. . . [g]ive the emergency unit the air. Go, go ahead, sir. Does anyone know that voice?" Next, Officer Flaherty comes over the air, in a distressed tone, shouting, "I need a car, 95 and LaSalle right now. I need it my partner's on foot. I think it's a stolen car. . . I don't know where he went. My partner's on foot." *Id*. At the time Proano responded to the scene he knew that it was an emergency situation, that it involved a suspected stolen vehicle, that Officer Flaherty's partner was on foot chasing an offender, and that Officer Flaherty did not know where his partner went. Additionally, the evidence demonstrates that 95th and LaSalle was a residential neighborhood and also a high crime, high gang and high narcotic sales area. Those were the set of circumstances Proano faced at the time the initial call came out. Further circumstances relevant to the reasonableness element emerged upon defendant's arrival.

On scene, Proano observed the suspected stolen vehicle, wedged between a police vehicle and a parked vehicle; he observed five teenagers in the vehicle; he observed one teenager stuck between the police vehicle and the suspected stolen vehicle. This person was screaming for help. Numerous verbal commands were given for the occupants to comply with police commands and show their hands, to which the occupants snubbed. Proano heard the engine of the suspected stolen motor vehicle revving but not moving. It sounded as though the gas pedal was all the way to the ground. Within a split-second, the suspected stolen vehicle fled in reverse at a high rate of speed, a gun drops to the ground, and a second occupant, Mr. Brown, is hanging out of the vehicle crying for help.

The government failed to prove that Proano's actions, in discharging his firearm at the driver of the fleeing Toyota were unreasonable. The government argued that it was not reasonable to use deadly force in this situation; however it failed to offer evidence to support the inference that the force was unreasonable. No evidence was presented that Officer Proano should have used a different, less lethal tactic. During arguments, the government characterized the vehicle as a non-issue that the jury could set aside because the occupants of the vehicle were joyriding in a stolen vehicle. However, Sergeant Snelling and Detective Kalicki both testified that a vehicle is a "dangerous weapon." Sergeant Snelling also testified that juveniles are just as much a threat as adults and that situations involving cars are the "most dynamic and dangerous situation" a police officer faces. Further, it is undisputed that the driver was attempting to flee while a passenger was hanging outside of the vehicle. Moreover, the driver of the reversing Toyota, Mr. Bates, testified that he was not aware that a civilian vehicle was also on LaSalle, not too far from the Toyota. The government's first witness agreed that Mr. Bates actions placed Mr. Brown in danger of death or great bodily harm. Officer Flaherty's was never impeached or

contradicted by subsequent evidence at trial. This is significant because the evidence adduced during the government's case in chief showed that Illinois law allows officers to use deadly force in an attempt to prevent death or great bodily harm to another. This is precisely the reason Officer Proano fired his weapon. He was fearful that the deadly weapon would harm the individual hanging from the car, one or more of the police officers on scene, or any innocent bystander located in the residential neighborhood.

Officer Flaherty and Detective Kalicki both testified that the area is a known gang area and a high crime area. Additionally, Officer Flaherty explained that it is a residential and commercial area, with a housing project located nearby, businesses, and churches. Officer Flaherty testified that officers are not trained to allow a fleeing vehicle to escape. In fact, he testified that officers are trained to stop a fleeing vehicle. Officer Flaherty explained that, on scene, he was in fear for his personal safety. The occupants of the vehicle refused to comply with his verbal commands and would not show their hands. Mr. Bates testified that he heard the police say "stop, let me see your hands", but ignored those commands because he was trying to get away. Officer Flaherty observed Mr. Brown attempt to flee from the vehicle and instructed him to get back in the car. Mr. Brown acknowledged at trial that he heard a police officer yelling at him to get back in the vehicle and that everyone in the vehicle was screaming. It was evident from Officer Flaherty, Mr. Bates, and Mr. Brown's testimony that the situation was chaotic and unpredictable at the very moment that Officer Proano fired his weapon.

The unpredictable nature of this situation cannot be overlooked. Although the government claimed the vehicle was not going anywhere because it was stuck, Officer Flaherty testified that he heard the engine of the Toyota revving but that it did not move initially. He said that it sounded as though the gas pedal was "all the way to the floor." Officer Flaherty explained

that, within a moment, the Toyota reversed at a "high rate of speed" the wrong way (northbound) down LaSalle. Simultaneously, he heard a weapon hit the ground and stated "Gun, Gun." He also observed Mr. Brown screaming, as he was hanging out of the reversing Toyota, and feared death or great bodily harm to him. Proano discharged his weapon immediately after the car began reversing. Mr. Bates testified that the shots were continuous for about three seconds. The evidence at trial established that an officer with average firearm skills will fire 4-5 shots per second. If 4-5 shots were fired within a second after Proano began firing and it was reasonable for Proano to begin firing; then the evidence could not prove that these shots caused the injuries here. Stated another way, if the decision to fire was reasonable then Proano could not be guilty of the charges here. Although the government claims that no one was driving the vehicle, shortly after it reversed, the video disputes this. It shows the vehicle turning and pivoting, causing Mr. Brown to fly out of it, and then moving forward in drive.

The government was required to prove that Proano's conduct violated the Federal Constitution, specifically the use of unreasonable force. The government failed to produce *any* evidence that Proano's actions in discharging his weapon were unreasonable. The United States Supreme Court has determined numerous similar police shootings to be reasonable. In 2014, the Supreme Court held that a police officer's shooting at a driver attempting to escape arrest, who posed no danger to the firing officer was reasonable. The case presented similar facts to the case at issue. In *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014), a driver failed to comply with police officers' commands to exit the vehicle; the driver had become stuck to the bumper of the police car; and the driver continued to use the accelerator during the attempted escape. 15 shots were fired during a span of 10 seconds and the driver was killed. The Supreme Court concluded that police acted reasonably in using deadly force to end the threat. "When the lives of innocent

bystanders are threatened, an attempt to terminate the threat does not violate the Fourth Amendment." *Id*. What is more, the Supreme Court concluded that the firing of 15 shots was not unreasonable in this case as it held, "if lethal force is justified, officers are taught to keep shooting until the threat is over." *Id*. at 392. In *Brosseau v. Haugen*, 125 S. Ct. 596 (2004), the Supreme Court was faced with a situation in which a police officer fired at a disturbed felon using his vehicle to escape. In coming to the determination that the shooting was reasonable, the Court reasoned that "the cases decided as of the time (of the shooting) did not clearly establish that the officer's conduct had violated the individual's Fourth Amendment right vis-à-vis unreasonable force. If the law at the time of the conduct did not clearly establish that the conduct would violate the Constitution, then there can be no liablity." The Court concluded that at worst, the shooting fell into the "hazy border between excessive and acceptable force." *Saucier v. Katz*, 121 S.Ct. 2151 at 206. The same holds true at the time of the shooting at issue. The government did not establish by evidence how Officer Proano's actions were unreasonable.

Courts have consistently held that the use of deadly force was reasonable in cases involving a person fleeing in a motor vehicle. *Elaine Cole et al v. C.E. Bone et al*, 993 F.2d 1328 (1993), at 1333: (holding the officer "had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves"); *Smith v. Freland*, 954 F.2d at 347 (noting "a car can be a deadly weapon" and holding the officer's decision to stop the car from possibly injuring others was reasonable). In *Smith*, the officer and suspect engaged in a car chase, which appeared to be at an end when the officer cornered the suspect at the back of a dead-end residential street. The suspect, however, freed his car and began speeding down the street. At this point, the officer fired a shot, which killed the suspect. The court held the officer's decision was reasonable and thus did not violate

the Fourth Amendment. It noted that the suspect "had proven he would do almost anything to avoid capture" and that "he posed a major threat to, among others, the officers at the end of the street." *Id*.

The record in this case is not strong enough to eliminate reasonable doubt as the government's evidence was, at best, "equally consistent with a theory of innocence" and "a theory of guilt." *United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991). More, the evidence is undisputed that Officer Proano was authorized by state law to use deadly force here. Government witnesses Flaherty and Snelling provided this evidence. Snelling did not, and could not here, render an opinion on this issue; however his discussion of Illinois state law corroborates Flaherty's testimony on the issue of reasonableness. If Proano complied with Illinois law it stands to reason that he could not be guilty of violating federal law here. At best, the evidence at the close of the government's case gives equal or nearly equal circumstantial support to a theory of guilt or innocence. Accordingly, this Court should grant Proano's renewed motion for judgment of acquittal on all counts. *United States v. Patino-Prado*, 555 U.S. 936 (2008).

**2. The Government Failed to Prove Beyond a Reasonable Doubt That Proano Acted Willfully.**

To obtain a conviction under § 242, the government had to prove beyond a reasonable doubt that Marco Proano acted willfully, that is, "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *Screws*, 325 U.S. at 105. In other words, the government had to prove beyond a reasonable doubt that Marco Proano willfully violated Mr. Bates and Mr. Hemmans constitutional right from unreasonable force. The government must prove, beyond a reasonable doubt, that Proano "had the particular purpose of violating a protected right made definite by rule of law or recklessly disregarded the risk that he would violate such right" when he discharged his firearm at the driver of the suspected stolen

vehicle. *United States v. Johnstone*, 107 F.3d 200, 210 (3d Cir. 1997). The government's evidence fell woefully short here as well.

Case law illustrates the quality and amount of evidence of "bad purpose" necessary to obtain a conviction under § 242. For example, in *Screws v. United States*, 345 U.S. 91 (1945) a sheriff and two other local law enforcement officers arrested Robert Hall, an African-American. *Id*. at 92. The officers arrested Hall, late at night, at his home on a warrant charging theft of a tire. *Id*. The officer handcuffed Hall, took him by car to the court house, and upon exiting the police vehicle was brutally beaten by the arresting officers. *Id*.

> As Hall alighted from the car at the court-house square, the three petitioners began beating him with their fists and with a solid-bar blackjack about eight inches long and weighing two pounds. They claimed Hall had reached for a gun and had used insulting language as he alighted from the car. But after Hall, still handcuffed, had been knocked to the ground they continued to beat him for fifteen to thirty minutes until he was unconscious. Hall was then dragged feet first through the court-house yard into the jail and thrown upon the floor dying. An ambulance was called and Hall was removed to a hospital where he died within the hour and without regaining consciousness. There was evidence that Screws held a grudge against Hall and had threatened to "get" him.

*Id*. at 92-93. The case was tried and a jury returned guilty verdicts against the three officers. *Id*. at 94.

The Court of Appeals affirmed the judgment of conviction; however, the Supreme Court reversed the judgment of the Circuit Court of Appeals because of an error in the jury charge during the trial at the district level. The Supreme Court held that the jury charge was in error because the question of intent was not submitted to the jury with proper instructions. *Id*. at 107. The trial court charged that if the three officers used more force than was necessary to make the arrest or to protect them from the alleged assault, they violated the statute; however, the Supreme Court held that "the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that

petitioners had the purpose to deprive the prisoner of a constitutional right, e. g. the right to be tried by a court rather than by ordeal." *Id*. at 106-07. "And in determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstances -- the malice of petitioners, the weapons used in the assault, its character and duration, the provocation, if any, and the like." *Id*.

In *United States v. Schafer*, 384 F. Supp. 496 (N.D. Ohio, 1974), the defendants, members of the National Guard, were deployed to the Kent State University campus. Id. 498. Nine members of the National Guard discharged their firearms on protestors at a political rally. As a result of the shooting, four students were killed and nine were wounded. Defendants were charged with willfully intending to deprive the protestors of their constitutional rights in violation of § 242. The district court held that the government failed to offer sufficient evidence "from which reasonable jurors may infer beyond a reasonable doubt that the defendants were possessed of any specific intent to deprive any students of their constitutional rights." *Id*. at 502.

This evidence was insufficient to establish, beyond a reasonable doubt, "that the defendants were motivated by a specific intent to deprive some students of constitutionally protected rights." *Id*. The court explained that "the conduct which 242 is intended to reach is not spontaneous firing by frightened guardsmen upon a nosily and occasionally violent crowd, but rather the execution of a specific purpose to deprive individuals of their rights, under color of law." *Id*. "Even the specific intent to injure, or the reckless use of excessive force, without more, does not satisfy the requirements of 242 as construed in *Screws*." *Id*. 503. In order to find the requisite specific intent, "there must exist an intention to 'punish or to prevent the exercise of constitutionally guaranteed rights. . .'" *Id*. (citations omitted). The court held that ". . . the firing by these guardsmen, by itself, does not constitute such conduct as would permit the inference of

the requisite willfulness" as required under 18 U.S.C. 242, and therefore judgement of acquittal of all defendants was granted. *Id*. at 503-504. Furthermore, courts have held that "the specific intent requirement of a 242 violation requires that the officers acted with an evil motive or bad purpose." *Unites States v. Bradfield,* 2000 U.S.App.LEXIS 17556 at 30 (6th Cir.2000). The contours of an officer's use of force must be clearly defined that a reasonable officer would have understood that they were violating the law. *Parks v. Pomerory*, 387 F.3d 949 (2004). There the court could not find an officers use of deadly force unreasonable because "reasonable mistakes can be made as to the *legal constraints* on particular police conduct. (emphasis in original). There, the court refused to analyze the incident in "distinct and separate segments", as the government did in the case at bar. Instead the court in *Parks* analyzed the incident from the officer's perspective and determined the shooting reasonable. "At the time (of the shooting), it was uncertain what would happen next. The situation was tense and 'rapidly evolving'. An officer's actions are not to be assessed with 20/20 hindsight when faced with the need to make instantaneous decisions." *Id*.

Against this backdrop, it cannot be said that the government proved beyond a reasonable doubt that Marco Proano possessed a specific intent to deprive Mr. Bates and Mr. Hemmans of their constitutional rights, at the time he discharged his firearm. As a sworn police officer, on duty and responding to a call for help and a criminal incident, Officer Proano was authorized to use deadly force in these types of situations and the evidence must prove beyond a reasonable doubt that he used and/or knew his force was unreasonable. (Insufficient evidence that the defendant, a licensed physician, had prescribed narcotics without legitimate medical purpose and outside the course of professional practice, *United States v. Binder*, 26 F.Supp.3d 656 (E.D.Mich 2014)).

Proano's case should not have made it to the jury because the government presented no direct evidence of his mental state. The government did not present testimony to suggest that in discharging his firearm, Proano was motivated by a specific intent to deprive Mr. Bates and Mr. Hemmans' of a constitutional right. It is uncontested that Proano discharged his firearm at Mr. Bates, who recklessly reversed the Toyota at a high rate of speed, in an attempt to flee, with a passenger hanging out of the vehicle. His intentions were to stop Mr. Bates from reversing the Toyota. What is more, Officer Proano actions did in fact stop Mr. Bates from continuing and putting more people at risk. His force was not only reasonable but effective. The evidence here reveals that Proano made a split-second decision in a rapidly evolving situation rather than a premeditated decision to use force. Like the court in *Shafer*, ". . . the firing by [Proano], by itself, does not constitute such conduct as would permit the inference of the requisite willfulness" as required under 18 U.S.C. 242, and judgement of acquittal should be granted. *Shafer*, at 503-504.

While the government produced circumstantial evidence to show willfulness, the government "may not prove its case . . . with conjecture camouflaged as evidence" by relying on guesswork or an unsupported, tenuous chain of inferences. *Jones*, 713 F.3d at 340 (citations omitted). And where "the jury would have to choose between two equally plausible inferences"—i.e., where the evidence is in "equipoise"—the Government has not presented a sufficient case either because "the jury necessarily would have to entertain a reasonable doubt." *United States v. Johnson*, 592 F.3d 749, 755 (7th Cir. 2010). Proano respectfully requests that this Court grant his motion for judgment of acquittal because no reasonable jury could have found that Proano acted willfully. The record in this case is not strong enough to eliminate reasonable doubt.

DATED: September 13, 2017

By: /s/ Daniel Q. Herbert
Daniel Q. Herbert

The Law Offices of Daniel Q. Herbert & Associates
Attorneys for Defendant Proano
206 S Jefferson, Suite 100
Chicago, IL 60661
(312) 655-4660
Dan.herbert@danherbertlaw.com
Attorney #6273940

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on September 13, 2017, he caused a copy of the foregoing **RENEWED MOTION FOR JUDGMENT OF ACQUITTAL** to be filed electronically with the Clerk of the Court through CM/ECF, which will send notification of such filing to all counsels of record.

By: /s/ Daniel Q. Herbert
Daniel Q. Herbert

The Law Offices of Daniel Q. Herbert & Associates
Attorneys for Defendant Proano
206 S Jefferson, Suite 100
Chicago, IL 60661
(312) 655-4660
Dan.herbert@danherbertlaw.com
Attorney No. 6273940