IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 590 |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| MARCO PROANO | ) | |

**DEFENDANT'S MOTION FOR A NEW TRIAL**

Defendant, Marco Proano, by and through his attorney, Daniel Q. Herbert, respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 33 for a new trial should this Court deny his motion for judgment of acquittal. In support thereof, Marco Proano states as follows:

**I.     Legal Standard under Federal Rule of Criminal Procedure 33.**

Federal Rule of Criminal Procedure 33 provides that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires."  In ruling on a Rule 33 motion, the court is not required to view the evidence in a light most favorable to the Government.  *United States v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000).  If the basis for seeking a new trial is not due to new evidence, then the Court must determine if a new trial is warranted because there exists a "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F. 3d 428, 436 (7th Cir. 2006).

Although a jury verdict in a criminal case is not to be overturned lightly, if the judge believes there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted – the judge has the power to set the verdict aside, even if he does not think that he made any erroneous rulings at trial. *United States v. Morales*, 902 F.2d 604, 605-06 (7th Cir. 1990).

**A. The Court's Willfulness Instruction was Plain Error Resulting in Severe Prejudice to Proano.**

In order to prove a violation of Section 242, the government must prove beyond a reasonable doubt that the defendant acted willfully. The element of willfulness is the touchstone element of a § 242 offense. *Screws v. United States*, 325 U.S. 91 (1945). In *Screws*, a sheriff, local policeman, and a special deputy beat an African-American prisoner to death on the steps of a court house. All three of the defendants were found guilty by a jury under the predecessor provision to 18 U.S.C. § 242.

The plurality opinion in *Screws* held that "willfully" in the statute means a "specific intent." The specific intent requirement ensures that the accused "is aware that what he does is precisely that which the statute forbids." *Screws*, 325 U.S. at 104. In the context of a criminal case, such as this one, willfully "generally means an act done with a bad purpose" and "something more is required than the doing of the act proscribed by the statute." *Id*. at 101. By "something more," the Court explained that the defendant must have the "specific intent [that Defendant] is aware that what he does is precisely that which the statute forbids." *Id*. at 101, 104. To clarify further, in order to satisfy the specific intent, the Court refers to, the defendant must "either know" or "act in . . . reckless disregard of a constitutional requirement which has been made specific and definite. When [defendants] are convicted for so [knowing or] acting, they are not punished for violating a knowable something." This heightened requirement of knowledge "was added to make [18 U.S.C. § 242] 'less severe.'" *Id*. at 104, 105.

The *Screws* Court stated that Section 242 is not a federal "catchall" statute, but designed to protect federal rights from invasion by those clothed with the authority of state law. 325 U.S. at 106. Such officials are guilty under 242 "where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution." *Id*. The Supreme

2

Court held that the jury charge was in error because the question of intent was not submitted to the jury with proper instructions. *Id*. at 107.  The trial court charged that if the three officers used more force than was necessary to make the arrest or to protect themselves from the alleged assault, they violated the statute, however, the Supreme Court held that "the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e. g. the right to be tried by a court rather than by ordeal." *Id*. at 106-07.

According to the Court's construction of the word "willfully, the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right. . ." *Id*. at 107.  The Supreme Court has held that a strict enforcement of the willfulness standard is itself essential to prevent Section 242 from being held unconstitutionally vague. See *United States v. Lanier*, 520 U.S. 259, 267 (1997), explaining *Screws*, 325 U.S. at 105.

In the instant matter, the instructions provided to the jury on willfulness did not fall in line with the law and policy of the *Screws* decision.  The *mens rea* instruction delivered at Proano's trial fell far short of explaining this high level of criminal intent. Had the jury been properly charged, it is reasonably probable that a different verdict would have been rendered. To avoid a miscarriage of justice, a new trial should be granted. Failure to define the mental statement of "willfulness" for the jury has been held to be a fundamental error requiring a new trial. *Screws v. United States*, 325 U.S. 91, 106-07 (1945); *United States v. Kerley*, 643 F.2d 299, 301-02 (5th Cir.1981) (holding that the district court's failure to charge the jury that willfully, as used in Section 242, means acting with a bad purpose or evil motive was reversible error).

Here, the Court provided the following instructions to the jury on the element of willfulness:

> The defendant acted willfully, meaning he intended to deprive [Mr. Bates and Mr. Hemmans] of this right.
>
> The defendant acted intentionally if he used force knowing that the force he used was more than what a reasonable officer would have used under the circumstances. The defendant did not act intentionally if he did not know that the force he used was more than what a reasonable officer would have used under the circumstances.

(Doc. 131 at 17, 28). Although the instructions utilize the term "willfully," they failed to charge the jury that in order to find that Proano acted willfully, it must find that Proano had the "specific intent to [Mr. Bates and Mr. Hemmans] of a constitutional right. . ." *Screws*, at 106-07.

This instructional error affected Proano's substantive rights. A "failure to instruct accurately with respect to an essential element of the offense is a serious matter requiring the careful scrutiny of the court," and, "in general," "constitutes plain error." *United States v. Kerley*, 838 F.2d 932, 939 (7th Cir. 1988). The "substantial rights" inquiry has taken many forms. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (asking whether error is "highly prejudicial"); *United States v. Young*, 470 U.S. 1, 16 n.12 (1985) (asking if error results in "a miscarriage of justice"); *Hamling v. United States*, 418 U.S. 87, 145 (1974) (asking whether error may have "materially affected the jurors' deliberations" justifying reversal); *United States v. Olano*, 507 U.S. 725, 732 (1993) (asking if error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."). Proano's circumstances satisfy them all.

The prejudice to Proano resulting from the erroneous *mens rea* standard is evident. Instead of having to prove that Proano had the specific purpose to deprive Mr. Bates and Mr. Hemmans' of a constitutional right, the government could rely on the jury to draw the conclusion

4

that Proano acted willfully based on the amount of force a reasonable officer would have used in similar circumstances. (Doc. 131, p. 17, 18). However, even if Proano knowingly used more force than a reasonable officer would have faced in similar circumstances, it does not satisfy the willfulness standard under § 242. In effect, it lowered the *mens rea* element that the government had the burden of proving and made it easier to obtain a conviction. Respectfully, because the instruction subjected Proano to an erroneous willfulness standard, this Court should grant a new trial.

### B. The Court Erred in Denying Defendant's Motion for a Bill of Particulars.

On October 28, 2016, Proano filed for a Bill of Particulars requesting additional information and a specific description and identification of the acts alleged to have resulted in the deprivation of Mr. Bates and Mr. Hemmans' rights. The Court Order denying Proano's Motion was in error for the reasons set forth in Defendant's Motion. (Doc. 20).

Additionally, in denying Proano's Motion, it allowed the government to alter its theory of the case. This is evident because the jury was instructed that "force that is initially reasonable may become unreasonable if it continues after the justification for the use of force no longer exists." (Doc. 131, p 23). The government maintained that all sixteen shots constituted unreasonable force in violation of 18 U.S.C. § 242. As such, there was no need for such a jury instruction because, according to the government, there was no need for force at all. This instruction permitted the government to submit to the jury the very opposite of its theory of the case. While the jury instruction accurately states the law, it was not necessary in this case and likely caused jury confusion.

5

**II.     Proano was Denied a Fair Trial Because the Court Permitted the Testimony of Officer Vincent Jamison and Sgt. Snelling Over Defendant's Objections.**

The evidence failed to show that Officer Jamison or Sgt. Snelling taught Officer Proano while he was a recruit in the training academy. What is more, the testimony was essentially "expert testimony" disguised as non-expert testimony.

**III.    Proano was Denied a Fair Trial by the Prosecutor's Improper Statements in Opening and Closing Arguments.**

This Court should also grant a new trial based on the prosecutor's improper statements made during opening and closing arguments. During opening and closing statements, the prosecutor's repeatedly made reference to "16 shots." Proano does not dispute that he discharged his weapon 16 times, however, repeatedly referencing "16 shots" denied Proano a fair trial and severely prejudiced him. It cannot be disputed that anti-police sentiment is at a high. A number of police involved incidents led to this acme, including the incident involving Laquan McDonald, here in Chicago.

As highly covered in the media, the McDonald matter involved a Chicago police officer who discharged his firearm sixteen times. The incident caused riots throughout the City. Protests continue to this day. The chant, "16 shots" is frequently utilized by protesters. The McDonald incident and "16 shots" cannot be separated. The prosecutors repeated reference to "16 shots" was a constant reminder to the jurors of the McDonald incident. It was a constant reminder of the dispassionate environment against Chicago police officers. It was a constant reminder that the jury must convict Proano.

It cannot be said that the repeated reference did not unfairly prejudice Proano's trial. Although this Court consistently instructed the jurors not to discuss the case, not to watch the news, read the newspaper, and the like, the reference to "16 shots" completely undermined this

Honorable Court's request to the jurors. The prosecutor's misconduct in opening and closing arguments denied Marco Proano a fair trial. See *United States v. Turner*, 651 F.3d 743, 750-52 (7th Cir. 2011) (reviewing applicable standards); *Ben-Yisrayl v. Davis*, 431 F.3d 1043 (7th Cir. 2005) (affirming grant of habeas corpus). For this second reason, a new trial should be allowed.

**IV.    The Jury's Verdict Was Against the Manifest Weight of the Evidence and Thus Constituted a Miscarriage of Justice.**

Proano relies on and incorporates, as if stated herein, the arguments contained in his Motion for Judgment of Acquittal.

**V.    The Court Improperly Granted a Batson Challenge Raised By the Government in Bad Faith**

After both parties submitted pre-emptory challenges in jury selection, the Court asked both parties whether there were any objections to either side's challenges. Both defendant and the government represented on the record that there were no objections. However, the government requested a break to speak with a supervisor. After a break, a discussion was held at side-bar wherein the government expressed concern that the jury to be impaneled did not have a single black juror. The Court asserted in essence that the jury was what it was. At this point the government, motivated by its desire to have a black juror, ironically raised a *Batson* challenge. Defendant provided several race-neutral reasons for the decision to use a pre-emptory challenge on the identified juror. The Court concluded that the reasons were pre-textual and affirmed the *Batson* violation and impaneled the identified juror. The Court was wrong in concluding that the race-neutral reasons were pre-textual and committed error when it impaneled the identified juror. Although Defendant did not keep record of the race of each potential juror, he has determined that 6 of the 10 pre-emptory strikes, more than half, were used on non-African American jurors. On the other hand, the government utilized all but one of its pre-emptory strikes on Caucasians.

7

The only non-Caucasian was Hispanic, the same race as the Defendant. What is more, the Court struck multiple African-Americans from the jury based upon hardships. Defendant argued against striking many of those African-American jurors. Defendant is unable to prove with certainty at this time the exact number of African-American jurors it argued to keep considering Defendant did not identify jurors by race nor does Defendant have transcripts at this time. This fact is relevant to prove that Defendant did not use a pre-emptory strike on the juror in question based upon the juror's race.

VI. **The Aggravation of the Errors Committed by the Court Resulted in Denial of Defendant's Right to a Fair Trial.**

For the reasons stated above, the culmination of which necessitates a new trial.

DATED: September 13, 2017

By: /s/ Daniel Q. Herbert
Daniel Q. Herbert

The Law Offices of Daniel Q. Herbert & Associates
Attorneys for Defendant Proano
206 S Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
Dan.herbert@danherbertlaw.com
Attorney #6273940

8

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on September 13, 2017, he caused a copy of foregoing **DEFENDANT'S MOTION FOR A NEW TRIAL** to be filed electronically with the Clerk of the Court through CM/ECF, which will send notification of such filing to all counsels of record.

By: /s/ Daniel Q. Herbert<br>Daniel Q. Herbert

The Law Offices of Daniel Q. Herbert & Associates
Attorneys for Defendant Proano
206 S Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
Dan.herbert@danherbertlaw.com
Attorney No. 6273940