UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 16 CR 590 |
| v. | ) |
| | ) Judge Gary Feinerman |
| MARCO PROANO | ) |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR DETENTION**

In his response, defendant contends that the mandatory detention provisions of 18 U.S.C. § 3143 do not apply to him. But the defendant was convicted of a violent crime, a § 242 violation involving bodily injury and the use of a dangerous weapon, and there are not exceptional reasons that warrant relief from mandatory detention for crimes of violence under the Bail Reform Act. As a result, defendant must be detained pending sentencing and appeal.

**I.      Defendant's Offenses of Conviction Constitute Crimes of Violence.**

The Bail Reform Act requires detention pending appeal, absent limited exceptions not application here (*see* Section II, below), of a person convicted of a "crime of violence," meaning a crime "that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3142(f)(1)(A), 3143(b)(2), and 3156(a)(4). Because the § 242 statute is divisible, and the elements of the defendant's crimes under § 242 meet the definition of a violent felony, the defendant should be detained pending sentencing and appeal.

1

Courts are to employ a categorical approach in determining whether a conviction constitutes a crime of violence; that is, a court must look not to the particular facts underlying conviction, but rather to the statutory elements, to determine whether a conviction constitutes a crime of violence. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *Mathis v. United States*, -- U.S. --, 136 S. Ct. 2243, 2248 (2016). Under the framework set forth in *Mathis*, if a single statute encompasses numerous alternatives, the question is whether the statute is divisible or indivisible. A statute is indivisible when it "sets out a single set of elements to define a single crime," which may be committed by different means. *Id.* at 2249. A statute is divisible when it lists elements in the alternative and thereby defines multiple crimes. *Id.*

Section 242, under which defendant was convicted, has two parts. It criminalizes the deprivation of rights under color of law, which is a misdemeanor offense punishable by up to one year imprisonment. 18 U.S.C. § 242. It then sets forth a felony, punishable by up to 10 years' imprisonment, if the crime resulted in bodily injury or involved the use or threatened use of a dangerous weapon. *Id.*

Because the statute contains different alternatives that carry with them different punishments—the misdemeanor offense and the felony offense—the statute is divisible. *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)); *see also United States v. Enoch*, 865 F.3d 575, 579 (7th Cir. 2017) ("If statutory alternatives in a criminal statute carry different punishments, then they must be elements of different crimes."). In other words, the deprivation of rights under color of law under § 242 (the language before the semicolon in § 242) is one

2

crime; and the portion of the statute after the semicolon, which requires bodily injury or the use of a dangerous weapon, is a separate crime. *Enoch*, 865 F.3d at 579.

Defendant was convicted of the second option. The jury found unanimously that he used unreasonable force under color of law that caused bodily injury and that he used a dangerous weapon during his offense. The question, therefore, is whether the use of unreasonable force that causes bodily injury, or that entails the use or threatened use of a dangerous weapon, has as an element "the use, attempted use, or threatened use of physical force" against another. It does.

First, as the Seventh Circuit has held in the context of 18 U.S.C. § 2113(d), the use or threatened use of a dangerous weapon "[has] as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016). This makes logical sense: "Regardless of the type of dangerous weapon that is employed . . . the use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause." *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016). Although *Armour* and *Taylor* involved statutes applicable to the use of a dangerous weapon during an assault, their holdings are applicable here. Section 242 does not use the word "assault," but the ordinary case under § 242 is where a police officer (a person acting under color of law) uses physical force that is unreasonable under the circumstances—in other words, it entails a beating, a shooting, or some similar exertion of physical force. *See United States v. Duncan*, 833

F.3d 751, 757 (7th Cir. 2016). Adding a dangerous weapon to those circumstances, by its very nature, will always constitute at least a threat of physical force.

The same is true of a § 242 violation that results in bodily injury. While the statute itself does not define "bodily injury," several other federal criminal statutes define bodily injury as a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of a function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary. *See United States v. DiSantis*, 565 F.3d 354, 362 (7th Cir. 2009) (citing 18 U.S.C. §§ 831(f)(5), 1365(h)(4), 1515(a)(5), 1512, § 1513, § 1864(d)(2)). These types of injuries, caused by a police officer as a result of using unreasonable force against another person, necessarily entail the use, threatened use, or attempted use of force "capable of causing physical pain or injury," *Johnson*, 559 U.S. at 140. The Seventh Circuit reached the same conclusion when considering a Wisconsin statute that penalized battery that "causes bodily harm," which it found to be a crime of violence because "force that *actually* causes injury necessarily was capable of causing that injury." *Yates v. United States*, 842 F.3d 1051 (7th Cir. 2016).

During the last hearing, the Court provided the government with a hypothetical prosecution under § 242 involving bodily injury that could arguably fall outside the definition of a crime of violence; that is, a prison doctor willfully refusing to provide medical care to an inmate, which leads indirectly to bodily injury. The government could find no § 242 case, nationwide, similar to this hypothetical, and it respectfully submits that this is not the type of case that is the core of conduct

4

prosecuted under § 242.[1] In applying the categorical approach, the Court is to be "concerned with the ordinary case, not fringe possibilities." *Duncan*, 833 F.3d at 757 (quoting *United States v. Taylor*, 630 F. 3d 629 634 (7th Cir. 2010); *see also United States v. Douglas*, 225 F. Supp.3d 762, 768-769 (7th Cir. 2016).

A review of recent Seventh Circuit case law reflects that the ordinary § 242 bodily injury case involves a police officer willfully using violent force. *See, e.g., United States v. Aldo Brown*, ___ F.3d ___ (7th Cir. 2017) (officer sucker-punched victim, then continued to kick and beat him for two minutes); *DiSantis*, 565 F.3d 354 (officer struck victim in the face and head); *United States v. Christian*, 342 F.3d 744, 746 (7th Cir. 2003) (officer punched him and kneed victim in the face). A similar review of recent published and unpublished cases from outside this Circuit reveals similar core conduct with respect to § 242 bodily injury cases. *See, e.g., United States v. Ronga*, 682 Fed. Appx. 849 (11th Cir. 2017) (officer punched victim with closed fist multiple times); *United States v. Boone*, 828 F.3d 705 (8th Cir. 2016) (officer kicked victim in the face); *United States v. Rodella*, 804 F.3d 1317 (10th Cir. 2015) (officer slapped victim's face with badge, shoved badge into victim's eye, and then slammed victim's head on the ground).

It is from these cases, which reflect the core conduct prosecuted under the statute, and not "fringe possibilities," that the Court should consider in its in analysis.

---

[1] Indeed, of the medical care cases the government did find, the deprivation of care was the result of inaction by police officers who caused the injuries by the use of excessive force. *See, e.g., United States v. Conaster*, 514 F.3d 508 (6th Cir. 2008) (officer caused injury by use of excessive force and prisoner died after officer refused to obtain medical care).

5

In doing so, it is clear that a § 242 violation involving bodily injury constitutes a crime of violence because, by its nature, these types of crimes involve the use of physical force, with the force being sufficiently violent as to cause bodily injury.

Because the jury found that the defendant violated § 242 including by causing bodily injury and through the use of a dangerous weapon, and because those statutory enhancements constitute elements and make defendant's crimes violent felonies, defendant should be detained pending sentencing and appeal.

## II. Defendant Presents No Extraordinary Reasons Warranting Release Pending Sentencing And Appeal.

Because the defendant has been convicted of a crime of violence, § 3143 requires that he be detained unless there is (1) a "substantial likelihood that a motion for acquittal or new trial will be granted" or the government will not recommend a term of imprisonment, *and* (2) the court finds by clear and convincing evidence that the defendant is not a flight risk or danger to the community. 18 U.S.C. § 3143(a)(2)(A). Because there is no reasonable likelihood of acquittal or a new trial, the government does intend to ask for imprisonment, and no exceptional circumstances under 18 U.S.C. § 3145(c) exist, the defendant must be detained.

First, neither of the exceptions identified in § 3143(a)(2) apply to the defendant. The government intends to recommend a sentence of imprisonment, and there is not a substantial likelihood that his post-trial motions will be granted. Indeed, the bulk of his post-trial motions raise issues that were already extensively litigated before and during trial, none of which involved close calls or questions. Moreover, this Court's rulings on the issues raised were either well within the Court's discretion or

in line with controlling precedent. And finally, the government presented ample evidence at trial from which a rational jury could convict the defendant of willfully depriving the victims of their constitutional rights. Therefore, the likelihood that defendant's post-trial motions will be granted is far from being substantial.

In addition, this case does not present "exception reasons" warranting the defendant's release pending sentencing and appeal. Under 18 U.S.C. § 3145(c), a defendant "may be ordered released, under appropriate conditions, by a judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Thus, in order to qualify for release under § 3145(c), the defendant must (1) show by clear and convincing evidence that he is not likely to flee or present a danger to the community, *id*. § 3143(a)(1), and (2) he must clearly show exceptional reasons rendering detention inappropriate, *id*. § 3145(c). Defendant cannot meet this latter standard.

Courts have held that "exceptional reasons" means a "unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992). Here, defendant claims that his compliance with pre-trial conditions of release and the care of his children, along with his status as a former police officer, constitute exceptional reasons. But compliance with conditions he is required to comply with is not "exceptional." Further, the defendant is not the sole caregiver of his children, and has not presented other extenuating family circumstances warranting relief. *See United States v. Franklin*, 843 F. Supp. 2d 620, 623 (W.D.N.C. 2012) (defendant permitted to remain on pretrial

7

release for a short period of time to arrange for child care for defendant's son, who had Tourette's syndrome and defendant was the only person who could manage the son's violent outbursts). Indeed, courts have long recognized that incarceration typically poses a hardship to families and have not, except in the most dire of circumstances, recognized this type of hardship as exceptional. *See, e.g.*, *United States v. Gary*, 613 F.3d 706, 710 (7th Cir. 2010) (noting that "[m]ost families suffer emotional and financial harm when a parent is imprisoned. Any experienced district judge has heard about those effects many times and must recognize that those effects are consequences of the parent's crime, not the sentence imposed.").

Rather, defendant's family circumstances, while unfortunate, are not unusual among those facing terms of incarceration. Courts have repeatedly held that "family hardship is not an unordinary consequence of incarceration." *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999) (finding that family financial hardship is not an exceptional reason); *see also United States v. Miller*, 568 F. Supp. 2d 764, 774-777 (E.D. Ky. 2008) (defendant's need to assist his wife and child in finding a new home was not an exceptional reason); *United States v. Mahabir*, 858 F. Supp. 504 (D. Md. 1994) (disruption of family not an exceptional reason); *United States v. Bryant*, 873 F. Supp. 660, 663 (N.D. Ga. 1994) (desire to spend time with 2 year-old son before incarceration not an exceptional reason). Defendant's incarceration will undoubtedly create emotional and financial difficulties for his family. But those difficulties do not rise to the level of exceptional circumstances

8

justifying an exception to Congress's clear command that individuals convicted of violence offenses be immediately taken into custody.

Finally, defendant contents that his status as a former police officer warrants consideration as an "exceptional reason," because it likely will confer a more protective custodial arrangement in the short term to ensure his safety. It may very well be true that protective custody will be necessary to ensure the defendant's safety—such steps are routinely taken by prisons when necessary given the particular status of a defendant—but the possible temporary need for a more protective custodial arrangement for an inmate is not an "exceptional circumstance." If this were the case, any police officer convicted under § 242 would automatically be exempt from the mandatory detention clause of § 3143(a)(2)(A). That cannot be the intent of Congress and it has not been the practice within this district.

### III. Conclusion

The government respectfully requests that this Court grant the government's motion for detention under the Bail Reform Act.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: /s/ Erika L. Csicsila
GEORGIA N. ALEXAKIS
ERIKA L. CSICSILA
Assistant United States Attorneys
219 South Dearborn, Fifth Floor
Chicago, IL 60604
(312) 353-5300

Dated: September 15, 2017