UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16 CR 590 |
| | ) | |
| MARCO PROANO | ) | Hon. Gary Feinerman |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL**

The UNITED STATES OF AMERICA, by its attorney, JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, responds in opposition to defendant Marco Proano's motion for judgment of acquittal, stating as follows:

**I.  Background**

On August 28, 2017, a jury found former Chicago Police Department officer Marco Proano guilty of two counts of using an unreasonable amount of force, which included the use of a dangerous weapon and resulted in bodily injury, in violation of 18 U.S.C. § 242. Doc. 134. The evidence at trial established beyond a reasonable doubt that defendant's actions as a CPD officer on December 22, 2013 – discharging his firearm 16 times into a car full of teenagers riding in a suspected stolen vehicle – were unreasonable and excessive, and that defendant knew at the time that his actions were unreasonable and excessive.

## II. Legal Standards for Obtaining A Judgment of Acquittal.

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

The case law regarding motions made pursuant to Rule 29 is well settled. "In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). Indeed, a "defendant faces an uphill battle in challenging the sufficiency of the evidence." *United States v. Orlando*, 819 F.3d 1016, 1021 (7th Cir. 2016). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Rahman*, 805 F.3d 822, 836 (7th Cir. 2015). In other words, a court

2

will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

Thus, under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009); *see also United States v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009). This strict standard recognizes that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. The Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

### III. The Government's Evidence At Trial Proved Defendant's Guilt Beyond A Reasonable Doubt, And Thus Defendant's Motion For Judgment of Acquittal Should Be Denied.

The jury convicted defendant of two counts of using an unreasonable amount of force, which included the use of a dangerous weapon and resulted in bodily injury,

in violation of 18 U.S.C. § 242. Doc. 134. At trial, the government was required to prove beyond a reasonable doubt: (1) the defendant was acting under color of law; (2) the defendant deprived each victim of his right to be free from the use of unreasonable force by a person acting under color of law, which is secured or protected by the Constitution and laws of the United States; (3) the defendant acted willfully, meaning he intended to deprive the victim of this right; and (4) the victim was present in Illinois. Doc. 131 at 17-18; *see also* Seventh Circuit Committee (2012) 18 U.S.C. § 242 – elements. Elements (1) and (4) are not at issue.

Viewing all the "evidence in the light most favorable to the prosecution," *Warren*, 593 F.3d at 546, the evidence at trial was more than sufficient to establish the remaining two elements: that defendant's actions were unreasonable, and that defendant acted willfully in discharging his firearm at the victims.

### A. The Evidence Established Beyond a Reasonable Doubt That Defendant Acted Unreasonably.

The evidence at trial proved beyond a reasonable doubt that defendant acted unreasonably on December 22, 2013, when he discharged his firearm – used deadly force – 16 times into a car full of teenagers riding in a suspected stolen vehicle.

As the jury was instructed at trial, "An officer may use deadly force when a *reasonable* officer, under the same circumstances, would believe that the suspect's actions place him or others in the immediate vicinity in imminent danger of death or serious bodily injury." Doc. 131 at 21 (emphasis added) (Seventh Circuit Committee

4

Civil 7.09 (2012) (modified by separating). The reasonableness inquiry is fact-dependent, but must be conducted from the perspective of a reasonable officer facing the same circumstances that defendant faced. Doc. 131 at 22. Factors such as the need for the use of force, the relationship between the need for the use of force and the amount of force used, any efforts made to temper the amount of force used, the severity of the crime, the extent of the victims' injuries, and threats reasonably perceived by the officer may be considered in determining reasonableness. Doc. 131 at 22. Here, a review of these factors in light of the evidence presented at trial shows the government proved beyond a reasonable doubt that defendant acted unreasonably.

First, with respect to the severity of the crime and the need for the use of force, the jury heard evidence that the officers were responding to a non-life threatening situation – one that did not come close to requiring the use of deadly force. At trial, the jury learned that defendant and his partner, Guy Habiak, were patrolling in the area of 95th Street and LaSalle Avenue at approximately 5 p.m. on December 22, 2013, when another officer, Kenneth Flaherty, radioed for assistance with a suspected stolen vehicle and a foot chase. Defendant and his partner responded to the call; moments later, they arrived near the intersection of 95th and LaSalle in their marked CPD vehicle. As shown on the dash cam video played at trial, after defendant arrived, he got out of and stepped in front of his vehicle, drew his firearm, cocked it sideways, and aimed it at the suspected stolen Toyota, which contained six teenagers:

5

five in the back seat, including both victims, and one partially in the front passenger seat.

As the defendant aimed his firearm at the Toyota, some of the passengers continued their efforts (without success) to exit the Toyota and flee the police. More specifically, the front seat passenger, Jaquon Grant, called for help and continued his efforts to free his leg, which had become wedged between the Toyota and Flaherty's squad car. In addition, Kevon attempted to exit the rear driver's side passenger door, but could only get partially out because the vehicle was positioned too close to a parked vehicle. These attempts at flight far from justified the use of deadly force. Indeed, it is unreasonable for an officer to use deadly force against a suspect merely because he is fleeing or attempting to flee. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Even after the car began reversing, no need for deadly force existed, and there was no threat *reasonably* perceived by defendant that would justify the use of deadly force in this case. At trial, the jury heard that rear seat passenger Delquantis Bates lunged forward from the back seat into the front, put the Toyota into reverse, and put his hand on the gas pedal to move the car backward. The evidence showed that as the Toyota began to reverse, defendant fired at the vehicle. No pedestrian or officer was in the Toyota's path. No one fired or aimed a gun at defendant. While a gun did drop from Jaquon Grant as the Toyota reversed, no one yelled "gun" and Habiak quickly recovered it and handed it to Flaherty. The evidence also showed that Kevon, the rear

6

driver's side passenger, remained half in and half out of the rear driver's side passenger door, and was not being dragged by the car; he can be seen with his head and shoulders above the roofline on the dash cam video as the car reversed. There was simply no justification for defendant to discharge his firearm into the Toyota under these circumstances, and no witness testified to that effect.[1]

In addition, the evidence showed that defendant made no effort to limit the amount of force he used, further proving the unreasonableness of his actions. Defendant fired every bullet in his gun, 16 in total, in the approximately 9 seconds that lapsed between the time that defendant fired his first shot (clearly depicted on the video) and when he reached to reload his gun (as he had been trained to do as soon as he discharged his last bullet). *See* GX 1 (dash cam video). Not only did defendant discharge every bullet he had available to him, but he also failed to pause or stop firing during those 16 shots in order to assess the situation and determine whether deadly force was justified under the evolving conditions – including that Kevon had hopped out of the Toyota, that no one was driving the Toyota after a

---

[1] In his motion, defendant suggests that Officer Flaherty testified that defendant's actions were reasonable, and that in any event, Illinois law permitted the use of deadly force in this case. *See* Doc. 143 at 10 (referring to corroboration for Flaherty's testimony on reasonableness). In fact, Officer Flaherty never opined on the reasonableness of defendant's actions. Officer Flaherty did testify to the effect that he could briefly see that Kevon might be in danger, but never testified as to the reasonableness of defendant shooting at the Toyota. And with respect to Illinois law, at trial the evidence showed that Illinois law only authorized defendant to do what was reasonable and necessary. It did not (and does not) justify the use of an unreasonable amount of force.

7

certain point, and that the Toyota was slowly rolling to a stop.[2] Such assessment (or lack thereof) informs the Fourth Amendment reasonableness analysis because even where force may be initially justified (and it was not here), such force may become unreasonable if it continues after the justification for the use of force no longer exists. *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 413 (5th Cir. 2009); *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2004). Here, defendant's repeated use of deadly force, even after conditions changed, and his failure to stop, pause, or reassess as he discharged his firearm under those evolving conditions, evinces the unreasonableness of his actions.

Finally, the extent of the victims' injuries further demonstrates the unreasonableness of defendant's actions. David Hemmans suffered two gunshot wounds: one through his thigh, and another through his foot, shattering his ankle. A bullet traveled through Delquantis Bates' shoulder, and others grazed his forehead, cheek, and chin, as evidenced by his testimony and medical records. Both victims were hospitalized afterward with wounds that were, according to their treating surgeon, serious and potentially life threatening. These wounds further amplify the unreasonableness of defendants' actions, as they were the product of the unnecessary

---

[2] In his motion, defendant claims that he discharged his firearm at the driver of the Toyota. *See* Doc. 143 at 6. But the actual evidence presented at trial belies this statement. Both the dash cam video and the testimony of Delquantis Bates proved that defendant continued to discharge his firearm *after* Delquantis Bates retreated into the back seat. Moreover, that the bullets landed all over and even outside the Toyota – as evidenced by the testimony of Sergeant Kevin Norris and the crime scene photos he took – further demonstrate the haphazard approach defendant took to discharging his firearm on December 22, 2013.

use of deadly force.

In his motion, defendant argues that his actions were reasonable because he acted out of fear for "the individual hanging from the car, one or more of the police officers on scene, or any innocent bystander located in the residential neighborhood." Doc. 143 at 7. In essence, defendant asks this Court to re-weigh evidence and return a different outcome. But the Court, under a Rule 29 motion, is "not [to] reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *Arthur*, 582 F.3d at 717. Rather, a jury's verdict must stand unless the record contains no evidence, regardless of how it is weighed, from which the jury could have convicted. *Presbitero*, 569 F.3d at 704. And as discussed above, the government presented ample evidence of the unreasonableness of defendant's acts from which the jury could have returned a conviction.

Moreover, defendant's arguments are further are belied by the actual facts. First, there was no evidence presented at trial—none—that defendant perceived a threat to any officers or bystanders on the scene at the time he discharged his weapon. Rather, the only evidence in the record of any threat perceived (reasonably or not) by defendant consisted of defendant's statements to Detective Kalicki and on the TRR: that he purportedly shot because Kevon was being dragged. And that purported threat wasn't *reasonably* perceived. As the dash cam video showed, Kevon wasn't being dragged by the Toyota, and in fact had actually hopped out of it after the defendant fired approximately 8 of 16 bullets in his direction. Defendant then

9

continued to fire the remaining bullets in his firearm – despite the fact that the purported "threat" no longer existed.[3] The jury rationally discredited defendant's purported explanation for discharging his firearm in determining that defendant acted unreasonably.

In addition, defendant argues that the overall circumstances surrounding the incident somehow make his actions reasonable. Doc. 143 at 7-8. For example, defendant suggests that the dangerousness of the neighborhood near 95th and LaSalle and the fact that the Toyota's gas pedal was "all the way to the floor" add to the "reasonableness" of defendant's actions. But again, the jury had ample evidence from which it, notwithstanding these additional circumstances, could have returned its verdict. *See Presbitero*, 569 F.3d at 704. But even factoring in these particular facts and circumstances, which may have justified defendant drawing his firearm in the first instance, they do nothing to justify the 16 shots he subsequently fired in the direction of the Toyota. And other "facts" proffered by defendant – for example, that Kevon was "screaming" for help as the car reversed – find no support in the record. *See* Doc. 143 at 8. Simply put, none of these actual or purported facts affect the reality that any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the element of unreasonableness was

---

[3] Based upon Officer Jamison's testimony regarding average firing rates, defendant claims that all 16 shot took place over the span of 3 seconds. Doc. 143 at 8. That testimony cannot be weighed more heavily than the video of defendant's actual shooting, which shows that 9 seconds elapsed between the time defendant started shooting and the time he reloaded his weapon.

satisfied beyond a reasonable doubt.[4]

### B. The Evidence Established Beyond A Reasonable Doubt That Defendant Acted Willfully.

The evidence presented at trial also proved beyond a reasonable doubt that defendant acted willfully – that is, he acted with intent to deprive victims of a constitutional right and that "he used force knowing that the force he used was more than what a reasonable officer would have used under the circumstances." Doc. 131 at 17-18, 28.[5] More specifically, defendant's actions in light of his training, as well as his after-the-fact attempts to justify his actions, show that he acted "knowing that the force he was using was more than what a reasonable officer would have used

---

[4] Defendant cites to cases in which a court found an officer acted reasonably and which he claims are factually similar to the instant case. *See* Doc. 143 at 8-10. They are not. *See Plumhoff v. Ricard*, 134 S. Ct. 2012 (2014) (officers acted reasonably in using deadly force to terminate high-speed chase that exceeded 100 mph and lasted over 5 minutes, during which suspect passed 24 vehicles, several of which were forced to alter course, and during which suspect refused to abandon efforts to escape, even after he collided with a police car and even after officer began firing shots); *Elaine Cole et al v. C.E. Bone et al*, 993 F.2d 1328 (1993) (officers acted reasonably in using deadly force to stop high speed chase involving semi-truck that sped through a toll booth without paying, engaged in the high-speed chase for 50 miles, during which time the truck careened through traffic with no signs of stopping, and other attempts at stopping the truck, including using roadblocks and shooting at its tires, proved unsuccessful); *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (suspect led police on a high-speed chase, reaching speeds in excess of 90 mph, and when the officer initially cornered the suspect in a field, the driver repeatedly swerved directly toward the police car, forcing the officer to move out of the way and allowing the suspect to continue the chase; it was only after additional officers cornered the suspect for a second time, and after the suspect smashed directly into an unoccupied police car and began to flee again, did the officer finally shoot the driver, a shooting deemed reasonable under the circumstances). Others are inapposite. *See Brosseau v. Haugen*, 125 S. Ct. 596 (2004) (qualified immunity case in which the Supreme Court explicitly declined to address the question of reasonableness).

[5] The propriety of this instruction is discussed further in the government's response to defendant's motion for a new trial.

11

under the circumstances." *Id.* at 28.

At trial, the government presented evidence of defendant's training, which when juxtaposed with defendant's actions, proves beyond a reasonable doubt that he acted willfully. Specifically, through the testimony of Sergeant Larry Snelling, the government presented evidence that defendant went through CPD's six-month training academy and learned about, among other things, the use of deadly force. Defendant learned that he should use deadly force – such as discharging his firearm in the direction of a person – only when he *reasonably* believed he needed to stop an intentional threat of death or great bodily injury to others. Defendant was also trained, and therefore knew, that he was required to adjust his use of deadly force if a change in circumstances warranted it. In other words, defendant learned that if he discharged his weapon, he was to regularly reassess its use. Finally, through training, defendant learned that he should not discharge his weapon into a crowd or when his intended target was not clearly visible. Yet defendant completely disregarded his training when he used deadly force repeatedly, without pausing to reassess, in a situation involving a crowd, an obstructed target, and no threat of death or great bodily injury. Defendant's unreasonable actions, in light of his training, show that he acted willfully.

Moreover, the evidence at trial showed that defendant had another, less lethal alternative available to handle the situation: let the Toyota go. Contrary to defendant's claim in his motion (Doc. 143 at 6), evidence *was* presented at trial

12

showing that defendant should have used a different tactic. Both Sergeant Snelling and Officer Flaherty testified that CPD officers were trained to allow fleeing vehicles to go. There is no requirement that they must fire at such vehicles. This testimony further confirms the willfulness of defendant's use of deadly force when confronted with the facts at hand in this case.

In addition, defendant's willfulness was evinced in his disregard of his firearms training. Moments before discharging his firearm, defendant held it with one hand, cocked it sideways, and aimed it in the direction of the Toyota and its occupants. Yet, as explained at trial by Officer Vince Jamison, defendant had been trained to hold his firearm in this type of situation with two hands, using sight alignment. Defendant was also taught that should he use deadly force by discharging his firearm, he was to reassess the situation during and after its use. Yet defendant came out of his vehicle with his weapon drawn and improperly held, and then defendant failed to reassess as he fired every bullet in his gun into the Toyota. Such blatant disregard for his training showed the jury that the defendant acted willfully.

Finally, defendant's own efforts to justify the shooting after the fact shows that he acted wilfully. Defendant was there that night; he saw that no one was being dragged by the Toyota and there was no risk of death or great bodily harm. But defendant shot anyway. Later, defendant tried to justify the shooting by telling Detective Kalicki, and documenting on the TRR, that he shot at the Toyota because Kevon was being dragged. But that was simply not true. Defendant's after-the-fact

13

justification, his attempt to provide reason for the unreasonable, shows that he knew at the time he fired that he was using more force than a reasonable officer would have used under the same circumstances.

In his motion, defendant states that the case should have been decided by the Court because the government presented no "direct evidence" of defendant's mental state, and made no showing that defendant's decision to discharge his weapon was premeditated. Doc. 143 at 14. But the government is not required to make either of these showings. Rather, the government was required to show that the defendant intended to act in a manner that he knew was unreasonable. That is precisely what the government showed at trial, using circumstantial evidence regarding defendant's training and inferences drawn from defendant's own actions and words.[6] [7] [8]

---

[6] In both his motion (Doc. 143) and his supplemental filing (Doc. 149), defendant cites to several federal investigations and cases in which charges were either not brought or found to be unwarranted under the facts of the case. Given the highly fact-specific nature of the inquiries in each case, the cases cited by defendant have limited, if any, value in analyzing the sufficiency of the evidence in the instant case.

[7] In his supplemental filing, defendant argues that the law did not clearly establish that defendant's conduct was unconstitutional. *See* Doc. 148 at 10-13. It is unclear how this argument factors into the defendant's Rule 29 motion and analysis, as the cases defendant cites relate to qualified immunity. To the extent defendant is simply arguing that defendant's conduct did not satisfy the elements of the offense, the government disagrees for the reasons set forth above.

[8] Defendant cites to *United States v. Schafer*, 384 F. Supp. 496 (N.D. Ohio 1974), claiming that it illustrates an instance in which the government failed to present sufficient evidence of willfulness to warrant a finding of guilt. Doc. 143 at 12. But defendant fails to explain how the events at Kent State in 1974, and the reasoning resulting from the case, are materially similar and applicable to the facts of the instant case.

## IV. Conclusion

Defendant states that the "record in this case is not strong enough to eliminate reasonable doubt as the government's evidence was, at best, equally consistent with a theory of innocence and a theory of guilt." Doc. 143. That statement misses the mark. The government presented ample evidence that, when viewed "in the light most favorable to the prosecution," allowed rational jurors to convict. *Warren*, 593 F.3d at 546. The defendant has not and cannot meet his heavy burden under Rule 29, and his motion for judgment of acquittal should be denied.

Dated: October 18, 2017                      Respectfully submitted,

                                               JOEL R. LEVIN
                                               Acting United States Attorney

By:    /s/ *Erika L. Csicsila*
        GEORGIA N. ALEXAKIS
        ERIKA L. CSICSILA
        Assistant United States Attorneys
        219 South Dearborn Street
        Chicago, Illinois  60604
        (312) 353-5300